Telina **NELSON**, a minor, by Cindra R. CARSON, Guardian ad Litem, Gerald Nelson, and Sherry Nelson, Plaintiffs,

v.

**PARK INDUSTRIES, INC., Defendant,**

**F.W. Woolworth Company and Travelers Insurance Company, Defendants-Appellants,**

and

Bunnan Tong & Company, Ltd., and United Garment Manufacturing Company, Ltd., Defendants-Appellees.

Nos. 82–2631, 83–1270.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1983.

Decided Sept. 13, 1983.

As Amended Sept. 13, 1983.

Rehearing and Rehearing In Banc Denied Oct. 13 and Oct. 28, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1278.

Frank L. Steeves, Riordan, Crivello, Carlson, Mentkowski & Henderson, Milwaukee, Wis., for defendants-appellants.

Barrett J. Corneille, Bell, Metzner & Gierhart, S.C., Madison, Wis., Jeffrey M. Gallagher, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for defendants-appellees.

George H. Senteney, Guelzow, Aubry, Senteney & Carson, Ltd., Eau Claire, Wis., for plaintiffs.

Before BAUER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

This appeal challenges two dismissal orders entered by the district court. In separate orders, the district court determined that it lacked personal jurisdiction over defendants Bunnan Tong & Company ("Bunnan") and United Garment Manufacturing Company ("United"). For the reasons stated below, we reverse both orders.

This diversity action is a products liability case in which the minor plaintiff seeks recovery for severe burns sustained when the cotton flannel shirt she was wearing ignited after contact with the flame from a butane cigarette lighter.[1] The amended complaint ("complaint") names the following parties as defendants: F.W. Woolworth Company ("Woolworth"), the retail seller of the flannel shirt; Travelers Insurance Company ("Travelers"), Woolworth's insurer; Bunnan, Woolworth's purchasing agent for the flannel shirt; and United, the manufacturer of the flannel shirt.[2] The complaint states four causes of action, alleging both negligence and strict liability theories against the defendants.

Bunnan moved to dismiss the complaint against it pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. In a brief order, the district court found that Bunnan has no contacts or relations with the State of Wisconsin and that there was no more than a mere likelihood that the flannel shirt supplied by Woolworth would find its way into Wisconsin. The court concluded therefore that the decision in *World-Wide Volkswagen Corp. v. Woodson* ("*World-Wide Volkswagen*"), 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), is controlling and it granted Bunnan's motion.[3] United then made a similar motion to dismiss. In a

1. In one cause of action, the minor plaintiff's parents also seek recovery for certain medical expenses incurred and for the deprivation of society and companionship of their daughter.

2. The complaint also names "ABC Corporation," which is a fictitious name for the un-

known manufacturer of the fabric used for the flannel shirt.

3. Woolworth's and Travelers' motion to reconsider this order was denied.

memorandum opinion and order, the district court again found *World-Wide Volkswagen* controlling and it granted United's motion to dismiss. Plaintiffs and Woolworth appeal from these two dismissal orders.

■ To determine whether exercising personal jurisdiction is proper, a court may receive and weigh affidavits prior to trial on the merits. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir. 1971). During this preliminary proceeding, although the burden of proof rests on the party asserting jurisdiction, if the district court's decision is based on the submission of written materials the burden of proof is met by a prima facie showing that personal jurisdiction is conferred under the relevant jurisdictional statute. *Id.; see also Neiman v. Rudolf Wolff & Co.,* 619 F.2d 1189, 1190 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980). Further, the party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record. *Id.* Applying these standards, the following facts underlie this appeal.

United and Bunnan are both foreign corporations and neither company has ever had any physical presence in the State of Wisconsin. United is incorporated under the laws of Hong Kong and it is in the business of manufacturing textile products in Hong Kong. From 1973 to 1977, United manufactured all of the 100% cotton flannel boys' shirts ("flannel shirts") purchased by Woolworth for resale in the United States. There was, however, no direct commercial relationship between United and Woolworth. Rather, Woolworth retained the services of Bunnan, which is also a company incorporated under the laws of Hong Kong. Bunnan is an exporter and agent for foreign buyers of general merchandise, including textile products manufactured in Hong Kong and other Southeast Asian countries. Bunnan and Woolworth have had a business relationship since the end of World War II. This relationship has consisted of a series of buying agreements in which Bunnan agrees to act as a buying representative for Woolworth. The services Bunnan performs in

that capacity include buying product samples, placing purchase contracts, inspecting products before shipment to Woolworth, acting as Woolworth's representative in efforts to obtain reimbursement from a manufacturer for defective merchandise, and holding Woolworth harmless from certain claims made against Woolworth involving the merchandise purchased by Woolworth through Bunnan.

The flannel shirt worn by the minor plaintiff in this case was manufactured by United in Hong Kong, purchased on behalf of Woolworth by Bunnan in Hong Kong, and sold at a Woolworth retail store by Woolworth in Wisconsin. The shirt was one from a purchase order placed by Woolworth with Bunnan in October 1976 for 4,300 dozen flannel shirts. Bunnan filled this purchase order with shirts manufactured by United. The shirts were packaged at United's factory with a label bearing the brand name "Topsall." Those labels were manufactured and placed on the shirts by United. Bunnan purchased the shirts from United "F.O.B. Hong Kong." The shirts were delivered by Bunnan to a shipper in Hong Kong which had been selected by Woolworth. The shipper then arranged the transportation of the shirts from Hong Kong to New York, Boston, Philadelphia, San Francisco and Los Angeles at Woolworth's expense. Several of these shirts eventually were displayed in a Woolworth retail store in Wisconsin and one was purchased for the minor plaintiff in this case.

■ A federal court has personal jurisdiction over the parties in a diversity action only if a court in the state in which the federal court is sitting would have jurisdiction. *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.,* 597 F.2d 596, 598 (7th Cir.1979). In addition, Fed.R.Civ.P. 4(e) requires that if no federal statute provides for the manner of service, service is governed by the law of the state in which the district court sits. The applicable statute in this case is Wisconsin's long arm statute, Wis.Stat. § 801.05 (1981–82). That section provides for personal jurisdiction over an out-of-state defendant

[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, providing in addition that at the time of the injury . . . [p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

Wis.Stat. § 801.05(4)(b) (1981–82). There are constitutional limits, however, on the reach of this long arm statute. These limits, most recently described by the Supreme Court in *World-Wide Volkswagen,* 444 U.S. at 291–94, 100 S.Ct. at 564–65, were relied on by the district court in dismissing United and Bunnan.

■■■■ Beginning our analysis with the long arm statute, there is no question in this case that United is subject to suit under the language of that statute. United manufactured flannel shirts in Hong Kong and the one allegedly causing injury was purchased and used in Wisconsin. Bunnan, however, argues for the first time on appeal that its alleged actions in this lawsuit do not come within the purview of the long arm statute. Specifically, Bunnan submits that the complaint does not allege that Bunnan "processed, serviced or manufactured" the flannel shirt at issue here. In addition, Bunnan contends that it did nothing to prepare any of the shirts for sale. We are not persuaded by Bunnan's technical pleading argument or its narrow reading of the long arm statute. Federal Rule of Civil Procedure 8(a)(1) requires only a short and plain statement of the grounds upon which jurisdiction depends, not a verbatim repetition of the language of the long

arm statute. The complaint alleges that Bunnan is in the business of selling and/or distributing children's clothing for resale to the public and specifically that Bunnan distributed to Woolworth certain flannel shirts, one of which ultimately was purchased in Wisconsin for the minor plaintiff. These allegations are sufficient to meet the pleading requirements if the conduct described falls within the scope of the long arm statute. In this regard, the parties and court have not located any case law interpreting the phrase "processed, serviced or manufactured."[4] As a general principle though, the Wisconsin Supreme Court has determined that the long arm statute should "be given a liberal construction in favor of the exercise of jurisdiction." *Stevens v. White Motor Corp.,* 77 Wis.2d 64, 74, 252 N.W.2d 88, 93 (1977). Under such a liberal construction, we conclude that the word "processed" should be interpreted to include a distributor's purchase and sale of goods in the normal course of the distribution of those goods.[5] Therefore, both Bunnan and United are subject to suit under the long arm statute, unless the exercise of jurisdiction over them would be inconsistent with due process.

The due process question raised here requires an interpretation and application of the holding and certain dicta in *World-Wide Volkswagen* concerning the stream of commerce theory of personal jurisdiction in a products liability case. In *World-Wide Volkswagen,* the Court considered the propriety of an Oklahoma court's exercise of personal jurisdiction over two defendants in a products liability case. The plaintiffs in

4. The Wisconsin Supreme Court has determined that the shipment from out of state of a pet dog as a gift did not constitute "products, materials or things processed, serviced or manufactured by the defendant" as set forth in Wis.Stat. 801.05(4)(b) (1981–82). *Lincoln v. Seawright,* 104 Wis.2d 4, 310 N.W.2d 596 (1981). The court acknowledged that the long arm statute should be liberally construed, but it also noted that the statute could not be ignored. The court's analysis, however, did not require it to examine the meaning of each word of the quoted passage and the opinion provides no guidance for us here.

5. The verb "to process" certainly may refer to the narrower concept of preparing something in the sense of manufacturing it. However, it also has the broader definitions of subjecting something to a particular system of handling to effect a particular result and preparing something for market or other commercial use by subjecting it to a process. *See* Webster's Third New International Dictionary of the English Language (1963). We think these broader definitions include the actions of a distributor such as Bunnan, i.e., purchasing and selling goods in the ordinary course of trade in a distribution system.

that case claimed injuries from an automobile accident that occurred in Oklahoma. They alleged that their foreign-manufactured automobile was defective and they sued the manufacturer, the importer, the regional distributor, and the retail dealer of the automobile. The regional distributor and retail dealer challenged the court's personal jurisdiction over them. Both defendants were incorporated in and had their places of business in New York, and that state was also where the plaintiffs had purchased the automobile.

The plaintiffs argued that the two defendants should be amenable to suit in Oklahoma because it was foreseeable that an automobile purchased in New York would cause injury in Oklahoma. The Court rejected these arguments, reasoning that a seller of chattels cannot be deemed to have appointed the chattel as his agent for service of process and that his amenability to suit does not travel with the chattel. The Court, however, did note that foreseeability is not irrelevant to the personal jurisdiction issue. It stated, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. In further explanation of this point the Court observed,

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in

the forum State. *Cf. Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961).

*World-Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567.

Applying those principles to the case before it, the Court found no basis for Oklahoma jurisdiction over the regional distributor or retail dealer of the automobile. The retail dealer's sales were made in a city in New York and the regional distributor's market was limited to the states of New York, New Jersey and Connecticut. There were no contacts between those defendants and Oklahoma other than the fact that the plaintiffs had driven the automobile to that state and an injury occurred there. In addition, the Court determined that whatever marginal revenues the two defendants received because the products they sold were capable of use in Oklahoma was too attenuated a contact to justify that state's exercise of personal jurisdiction over them. The Court therefore reversed the Oklahoma Supreme Court's decision upholding jurisdiction.

The *World-Wide Volkswagen* Court's recognition of a distinction among the various entities that might compose a distribution system of a product is pivotal to the decision in this case. The two defendants in *World-Wide Volkswagen* who were not amenable to Oklahoma jurisdiction were at the end of the automobile's distribution system. The scope of the foreseeable market served by those defendants and of the benefits those defendants derived from the sale of the product was narrow. In contrast, the relevant scope is generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market. Such manufacturers and distributors purposely conduct their activities to make their product available for purchase in as many forums as possible. For this reason, a manufacturer or primary distributor may be subject to a particular

forum's jurisdiction when a secondary distributor and retailer are not, because the manufacturer and primary distributor have intended to serve a broader market and they derive direct benefits from serving that market. *See Hendrickson v. Reg O Co.,* 657 F.2d 9 (3d Cir.1981); *De James v. Magnificence Carriers, Inc.,* 654 F.2d 280 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Poyner v. Erma Werke GMBH,* 618 F.2d 1186 (6th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir.1980); *Samuels v. BMW of North America, Inc.,* 554 F.Supp. 1191 (E.D.Tex.1983); *Rockwell International Corp. v. Costruzioni Aeronautiche Giovanni Augusta,* 553 F.Supp. 328 (E.D.Pa.1982); *see also Froning & Deppe, Inc. v. Continental Illinois National Bank & Trust Co.,* 695 F.2d 289, 291–93 (7th Cir. 1982).[6]

In this action, United's and Bunnan's functions in the distribution of the flannel shirts place them at the start of the system. This case, thus, is distinguishable from the facts underlying the holding of *World-Wide Volkswagen* because United and Bunnan are early actors in a distribution system which places and moves the product in the stream of commerce. *World-Wide Volkswagen* is also different because the allegedly defective product here not only caused injury in the forum, but it was also purchased there. The question remains, though, whether under the distribution system used here it can be said that United's

and Bunnan's conduct and their connection with Wisconsin are such that they should reasonably anticipate being haled into court there.

 In opposing jurisdiction, United and Bunnan maintain that the flannel shirt at issue was sold in Wisconsin only because of Woolworth's actions rather than theirs. They point out that Woolworth sought out Bunnan in Hong Kong and that Bunnan independently contacted United. Further, United submits that it had no control over the flannel shirts once they were sold to Bunnan and that it made no efforts to distribute the shirts anywhere. However, even though Bunnan and United did not originate the distribution system and do not control it, they did place the flannel shirts in and move them along a stream of commerce destined for retail sale throughout the United States in Woolworth's retail stores. In determining whether it is reasonable to hale Bunnan and United into court in Wisconsin, a critical fact is whether those defendants were aware of that distribution system. If they were aware, they were indirectly serving and deriving economic benefits from the national retail market established by Woolworth, and they should reasonably anticipate being subject to suit in any forum within that market where their product caused injury.[7]

In regard to the knowledge issue, affidavits submitted by Woolworth allege that both Bunnan's and United's personnel were aware of Woolworth's distribution of prod-

---

**6.** These cases generally involve manufacturers or distributors who governed their own distribution systems and/or also engaged in activities in the forum soliciting sales of their products. Although evidence that a defendant manages its own distribution system or engages in other contacts with a forum presents a stronger case for exercising personal jurisdiction, such conduct is not a minimal requirement for jurisdiction as long as it can be said that a defendant's conduct and connection with a particular forum are such that it should reasonably anticipate being haled into court in that forum. *See World-Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567; *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961).

**7.** The district court determined that United did not deliver its products into the stream of commerce apparently because Woolworth went to Hong Kong to import flannel shirts and then distributed and sold them in the United States. We find this analysis of the stream of commerce theory too narrow. A manufacturer places a product in a stream of commerce whether it controls the distribution of the product or not. The relevant question for due process purposes in a personal jurisdiction challenge is whether the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567. *See also* footnote 6 *supra.*

ucts for retail sale in the ordinary course of trade. Bunnan does not dispute this fact and it would seem likely that it `is true, since Bunnan has had direct contractual relations with Woolworth for many years and employees of the two companies have visited each other's offices in Hong Kong and New York many times. United's knowledge of the flannel shirts' distribution is a closer question. The district court noted that United was possibly aware of the scheme of distribution, but it found that United had no knowledge or expectation that Wisconsin consumers would purchase its shirts. *Nelson v. F.W. Woolworth Co.,* No. 81 C 646, slip op. at 6 (W.D.Wis. Jan. 14, 1983). We find, however, that on the record established and under the standards governing at this stage of the litigation, United was more than possibly aware of Woolworth's distribution system. The Woolworth affidavits indicate that Woolworth personnel annually visited United's premises and that one of United's directors knew that the shirts manufactured under the "Topsall" label for Woolworth would be imported into the United States and sold at Woolworth retail outlets throughout the United States.[8] These allegations are sufficient for a prima facie showing and we therefore must assume United had full knowledge of the distribution scheme.

 Woolworth's established distribution system funneled thousands of flannel shirts into its retail stores throughout the United States. For many years Bunnan acted as Woolworth's buying agent for those flannel shirts and for several years United manufactured them. The normal course of the distribution system brought several shirts to a retail store in Wisconsin and one was purchased for the minor plaintiff in this case. Bunnan and United were aware of the Woolworth distribution scheme and derived economic benefit from selling the flannel shirts they placed into and moved along the stream of commerce. We conclude that Bunnan and United were participating in that distribution system such that they should reasonably anticipate being haled into court in a forum where the system brought a shirt that allegedly caused injury. Therefore, we reverse the two orders dismissing United and Bunnan from this action for lack of personal jurisdiction.

It is so ordered.

---

8. Apparently, virtually all printed cotton flannel shirts sold in the United States enter this country through some distribution system originating in a foreign country because 85% to 90% of all those shirts are manufactured by businesses outside the United States.