[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Matthew J. Noon brought this product liability action to recover for damages allegedly sustained when the bolt holding one of the hand-pieces of a set of crutches he was using failed, causing him to lose his balance and fall. This accident occurred on June 3, 1992, and on January 29, 1993, the plaintiff filed suit against the crutch manufacturer, Calley and Currier Company ("Calley Currier").
On January 19, 1994, Calley Currier filed a third party complaint against ESCO Fasteners Company, Inc. ("ESCO"), alleging it supplied the defective bolt. All of the bolts sold by ESCO to Calley Currier were manufactured by Korea Hinomoto Company, Ltd. ("Korea Hinomoto"), and ESCO therefore impleaded Korea Hinomoto on August 26, 1994, seeking indemnification and contribution pursuant to Connecticut Products Liability Act, Conn. Gen. Stat. § 52-572m-52-572r
(1995).
On November 28, 1994, Korea Hinomoto moved to dismiss the fourth party complaint, claiming this Court cannot exercise personal jurisdiction over it.
ESCO is a distributor of fastening devices, with its principal place of business in Oceanside, New York. ESCO sells fastening devices to manufacturer and distributors in Connecticut and throughout the nation.[1] Korea Hinomoto, is a manufacturer of fastening devices with its principal place of business in the Masan Free Export Zone, Masan, Korea. Korea Hinomoto has sold fastening devices to ESCO for distribution for at least fifteen years.[2]
In 1994, Korea Hinomoto also sold products to customers CT Page 1983 in Canada, Australia, Japan, Switzerland, Italy and France.
Lack of personal jurisdiction is properly raised by a motion to dismiss. Chrysler Credit Corp. v. FairfieldChrysler-Plymouth, Inc., 180 Conn. 223, 429 A.2d 478 (1980). When jurisdiction is asserted on the basis of the longarm statutes, and the defendant challenges jurisdiction by a motion to dismiss, the burden of proof is on the plaintiff to present evidence that will establish jurisdiction. StandardTallow Corp. v. Jowdy, 190 Conn. 48, 459 A.2d 503 (1983). The court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light. A motion to dismiss will be denied where a plaintiff is able to make a prima facie showing that defendant's conduct was sufficient for a court to exercise personal jurisdiction. Inre Connecticut Asbestos Litigation, 677 F. Sup. 70, 72 (D. Conn. 1986).
The complaint alleges that jurisdiction attaches under Conn. Gen. Stat. § 33-411(c)(3) which states:
 Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting business or has transacted business in this state and whether or not it has engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows. . .
 (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers. . . .
The first issue to be decided is whether Korea Hinomoto's business practices subject it to suit in Connecticut under the long-arm statute. The long-arm statute Section (3) requires production, manufacture or distribution of goods by the corporation along with a reasonable expectation that such goods are to be used or consumed in Connecticut. The section CT Page 1984 goes on to indicate that how or where the goods were produced, manufactured, marketed or sold does not matter in deciding jurisdiction.
In arguing that there is no jurisdiction over the 4th party defendant, the company notes; its principal place of business is in the Mason Free Export Zone, Mason, Korea, it has virtually no contact with the State of Connecticut, and it is not licensed to do business in Connecticut. It has never sold its products directly to customers to Connecticut; never has shipped products in Connecticut and it has no offices or manufacturing facilities in Connecticut. Further, Korea Hinomoto is not listed in the telephone book; nor does it advertise in any publications that are circulated in Connecticut. Finally Korea Hinomoto does not have any employees, bank accounts or real estate in Connecticut.
Korea Hinomoto also has no direct connection with Calley Currier, and it was not aware that any of its products were sold by ESCO to Calley Currier Company. Korea Hinomoto also was unaware that Calley Currier would sell crutches to anyone in Connecticut.
The 4th party defendant, Korea Hinomoto, described its connections with Connecticut best.
 "The only claim of a connection between Korea Hinomoto and Connecticut that is alleged is that a screw manufactured by Korea Hinomoto in Korea was sold to a New York distributor which then sold the bolt to a New Hampshire manufacturer whose product eventually found its way into Connecticut."
The third party plaintiff, ESCO, position is that it is a nationwide distributor of Korea Hinomoto products. The parties have had a purchasing arrangement for the last fifteen years, and Korea Hinomoto knows that ESCO distributes this product nationwide. The third party plaintiff also argues that Korea Hinomoto has never requested ESCO to limit its jurisdiction of its products in any way. This court notes that Korea Hinomoto's product is sold by ESCO in 45 states and the District of Columbia, and that it sends its products to nine states directly and that the third party plaintiff business comprises of 5.8% of all its sales in the U.S. The bolt sales of Korea Hinomoto to ESCO equaled 4.6% of Korea CT Page 1985 Hinomoto's total sales of bolts in the U.S.
While it may be true that Korea Hinomoto may have not known specifically which states were receiving their bolts, or were ignorant that they made their way into the Connecticut market, certainly with ESCO having such a vast sales distribution of their product it is reasonable to infer that they must of known that ESCO was not an end-product user of their bolts and that they must have distributed them in the United States. Further, ESCO's distribution is not limited to just contiguous states or New England states but it has a very wide path that includes 90% of the United States.
It is found by this court that Korea Hinomoto had a "reasonable expectation" that its bolts would be used in Connecticut. In arriving at this conclusion this court finds that Korea Hinomoto may not have actually known that its bolts ended up in Connecticut but it is a reasonable inference that a sale of their bolts to ESCO that resells them to 45 states including directly in Connecticut will generally result in the sale — or at least use — of their bolts in Connecticut.
The court's analysis is not finished as now it must decide as to whether the exercise of personal jurisdiction over Korea Hinomoto would be consistent with the 4th party defendant's rights under the Due Process Claim of the U.S. Constitution.
It is Korea Hinomoto's argument that even if there is long-arm jurisdiction, this action must be dismissed because Korea Hinomoto lacks "minimum contacts" with the State of Connecticut to satisfy due process. Due process requires that a nonresident defendant have certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington,326 U.S. 310, 316 (1945).
The decision at International Shoe requires a double-pronged test for finding jurisdiction over a corporation not present in a state.[3] They must have (1) have certain minimum contacts or ties with the forum state such that (2) maintenance of the suit does not offend traditional notions of fair play and substantial justice. Id. at 316. UnderInternational Shoe the standard for imposing jurisdiction over CT Page 1986 persons outside the state has remained one that depends on a measure of the person's activity in the state coupled with the constraint that the state's exercise of such power would not offend traditional notions of fair play. After InternationalShoe, the Supreme court has further refined the definition of "minimum contacts." In Hanson, 357 U.S. 253, the Supreme court limited those "minimum contacts" necessary to confer jurisdiction to those activities of an out-of-state person by which the person "purposely avails itself of the privilege of conducting activities within the forum state."357 U.S. at 253. This occurs where the contacts "proximately result from actions by the defendant himself that create a `substantial connection' with the forum state," Burger King Corp. v.Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183,85 L.Ed.2d 528 (1985) (quoting McGee, 355 U.S. at 223, 78 S.Ct. at 201) (emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476. This test is not to be applied mechanically; it "must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." InternationalShoe, 326 U.S. at 319.
In Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 786
(1980) the Supreme Court rejected the argument that the State of Oklahoma could exercise personal jurisdiction over two New York corporations who had no direct activity in that state:
 [they] avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.
In discussing the due process clause, the Supreme Court stated:
 The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the CT Page 1987 expectation that they will be purchased by consumers in the forum State.
Id. at 297-98.
In World-Wide the courts focus was on conduct deliberately directed toward the forum states with business requiring clear notice of suit in order to allow it to react to possible litigation by buying insurance, increasing its product costs or by not doing business in the State.
Many subsequent decisions by the courts have found that personal jurisdiction will attach upon products if delivered into "the stream of commerce" with the exception that [it] will be purchased by consumers in the forum state." BeanDredging Corp. v. Dredge Technology Corp., 744 F.2d 1081 (5th Cir. 1984), Nelson v. Park Industries, Inc., 717 F.2d 1120
(7th Cir. 1983), cert. denied, 465 U.S. 1024, 104 S.Ct. 1277,1278, 79 L.Ed.2d 682 (1984).
In Asahni Motor Industry Co. v. Superior Court ofCalifornia, 480 U.S. 102 (1987) a deeply divided court muddied the issue further. Justice O'Connor along with Chief Justice Rehnquest, Justice Powell and Scalia, recognized that the language of World-Wide could subject any manufacturer that is aware that its products enters a state, to personal jurisdiction. Justice O'Connor stated:
 The placement of a product into the stream of commerce, without more is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State. CT Page 1988
480 U.S. at 112.
Justice Brennan disagreed and found that "additional conduct" beyond placing the product in the stream of commerce with the expectation that it will be purchased in the forum State is all that is necessary.
After weighing both standards, this court will apply the following tests:
 (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.
The 4th party defendant is a foreign corporation, not registered to do business in Connecticut. It has no presence in Connecticut, no employees in Connecticut, no phone and it does not directly solicit business in the State of Connecticut. Thus the defendant has no substantial connection nor has it acted purposefully in a business manner within the State of Connecticut.
In examining the minimum contacts of the 4th party defendant, this court finds that to invoke personal jurisdiction would offend the traditional notions of fair play and would violate the due process rights of the defendant Korea Hinomoto.
The Motion to Dismiss is granted.
Norko, J.