**The KINETIC CO., INC., Plaintiff,**

v.

**BDO EOS SVETOVANJE, d.o.o., Defendant.**

**No. 04–CV–581.**

United States District Court, E.D. Wisconsin.

March 18, 2005.

---

James E. Culhane, Tyson A. Ciepluch, Davis & Kuelthau SC, Milwaukee, WI, for Plaintiff.

Jeffrey Morris, Quarles & Brady LLP, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

RANDA, Chief Judge.

The plaintiff, the Kinetic Co., Inc., ("Kinetic") commenced this action against the defendant, BDO EOS Svetovanje, d.o.o., ("EOS") a Slovenian corporation, in Milwaukee County Circuit Court. Kinetic seeks damages for unjust enrichment and a declaratory judgment that EOS cannot force Kinetic to arbitrate and that Kinetic does not owe the sums claimed by EOS. Alleging federal jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of Wisconsin and a foreign state, respectively, and the amount in controversy, exclusive of costs, exceeds $75,000, EOS removed the action to this Court.

### Motion to Dismiss for Lack of Personal Jurisdiction

Invoking Fed.R.Civ.P. 12(b)(2), EOS seeks dismissal of Kinetic's complaint. EOS argues that the Court lacks personal jurisdiction over EOS pursuant to Wis. Stat. § 801.05 and that this Court's exercise of personal jurisdiction over EOS would violate due process. Further, EOS argues that the parties agreed to arbitrate all disputes and that a previously filed arbitration proceeding pending in Geneva, Switzerland presents the issues raised in

Kinetic's complaint. Kinetic opposes the motion. Both parties have submitted affidavits in support of their respective positions, which reveal factual conflicts.

### Applicable Law

In ruling on a motion to dismiss for lack of personal jurisdiction, courts are not limited to the facts set forth in the complaint, but rather may receive and consider affidavits from both parties. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983); *see also, Met–L–Wood Corp. v. SWS Indus., Inc.*, 594 F.Supp. 706, 708 n. 5 (N.D.Ill.1984). The Court is required to consider the pleadings and affidavits in the light most favorable to the plaintiff. *See Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir.1984). When deciding such a motion solely on the basis of the parties' written materials, the plaintiff need only show a *prima facie* case of personal jurisdiction and is entitled to have all inferences about material jurisdictional facts resolved in its favor. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir.2003); *Wisconsin Elec. Mfg. Co., Inc. v. Pennant Prods.*, 619 F.2d 676, 677 n. 1 (7th Cir.1980).

### Relevant Facts [1]

Kinetic, a Wisconsin corporation, engages in the industrial knife production business. (Compl.¶ 1.) EOS,[2] a Slovenian corporation, engages in legal, accounting, and business purchase consultation services in Slovenia. (*Id.* at ¶ 2.) EOS has 39 employees—all of whom are employed in Slovenia. (Aff. of Andrej Marinc [Marinc Aff.] ¶ 2.) EOS has never employed anyone in the United States. (*Id.* at ¶ 2.)

EOS has never been authorized, licensed, registered or chartered to transact any business in Wisconsin. (*Id.* at ¶ 3.) EOS has never had any place of business in the United States and has never maintained a post office box, a mailing address, a telephone listing or a bank account in Wisconsin. (*Id.*) EOS has never employed any agent to solicit business in Wisconsin and does not have an agent for service in Wisconsin. (*Id.*)

EOS and Kinetic met through an intermediary. EOS and Arthur Andersen & Co., Societe Cooperative ("Arthur Andersen SC") entered into a "Correspondent Agreement—Solvenia" in October 1995. (Marinc Aff. II ¶ 2 & Ex. A.) The introduction to the agreement states that Arthur Andersen SC wants to establish a relationship with a firm able to provide professional accounting, auditing and tax consulting services in Slovenia to Andersen Worldwide clients with operations in Slovenia, and that EOS wants to establish a relationship with Andersen Worldwide to provide services to EOS clients having operations outside Slovenia. (Marinc Aff. II ¶ 2 & Ex. A at 1 [unnumbered].)

The agreement contains a provision entitled "Referral of Client Engagements." That provision states, in part: "[i]nquiries received by Andersen Worldwide offices concerning professional assistance in SLOVENIA related to accounting, auditing and tax-consulting, which would be appropriate for referral, will be referred on a non-exclusive basis to EOS." (Marinc Aff. II ¶ 3 & Ex. A at 2.) (emphasis added). The "Referral of Client Engagements" provision also contains a reciprocal non-exclusive referral provision for referral of inquiries, received by EOS concerning

---

**1.** This statement sets forth the facts with all factual conflicts in the affidavits resolved in favor of Kinetic. *See Jacobs/Kahan*, 740 F.2d at 589.

**2.** "EOS," as used in the business's name, are the first letters of the words "Employee Ownership Services." (Supplemental Aff. of Andrej Marinc [Marinc Aff. II] ¶ 2 & Ex. 2.) Andrej Marinc ("Marinc") is the director of EOS. (Aff. of Andrej Marinc [Marinc Aff.] ¶ 1.)

"professional assistance outside SLOVE-NIA," to Andersen Worldwide, when appropriate. (*Id.*)

The agreement between EOS and Arthur Andersen SC further states: "Any and all disputes which cannot be settled amicably, including any ancillary claims of either party, arising out of or in connection with the negotiation, execution, interpretation, performance or non-performance of [the] Agreement (including the validity, scope, and enforceability of [the] arbitration provision) shall be solely and finally settled by a single arbitrator in Geneva, Switzerland unless the parties agree on another location." (Marinc Aff. II ¶ 4 & Ex. A at 7.)

Interaction between EOS and Kinetic began in September 2000, when EOS and Kinetic engaged in negotiations to explore Kinetic's purchase of SŽ Noži Ravne, d.d.o. ("Noži")—a state-owned Slovenian producer of industrial knives that was being privatized. (Compl. ¶ 3; Marinc Aff. ¶ 5.) The relationship between the parties was initiated by the Milwaukee office of Arthur Andersen, LLC ("Arthur Andersen"). (Aff. of Joseph Masters [Masters Aff.] ¶ 16). Joseph Masters ("Masters"), president of Kinetic, "understood" that by retaining EOS, Kinetic was retaining Arthur Andersen's partner in Slovenia. (*Id.* at 17.)

Representatives of Kinetic, including Masters, traveled to Slovenia to meet with Marinc and other EOS representatives. (Marinc Aff. ¶ 5.) Igor Simac ("Simac"), an EOS representative, was assigned to represent Kinetic's interest in the purchase of Noži. (Compl.¶ 11.) Further discussions between EOS and Kinetic ensued by phone and e-mail. (Marinc Aff. ¶ 6.)

In October 2001, EOS began providing services to Kinetic in Slovenia in connection with Kinetic's attempt to acquire Noži. (Marinc Aff. ¶ 6.) Prior to October 1, 2001, EOS and Kinetic tried, without success, to enter into a consulting agreement. (Masters Aff. ¶¶ 4–5.) Between October 1, and December 12, 2001, EOS and Kinetic continued to negotiate. (*Id.* at ¶ 6.)

On December 4, 2001, Marinc e-mailed Kinetic a written consulting agreement, which included Article 13, entitled "Settlement of Disputes." (Marinc Aff. ¶ 8 & Ex. A.) Article 13 states that if any dispute arising from the interpretation or performance of the agreement was not settled amicably between the parties, "within a one-(1) month period," the dispute "shall be settled by three arbitrators in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce" and that the arbitration would be held in Geneva, Switzerland, in the English language. (*Id.*)

On December 11, 2001, Masters e-mailed a redlined version of the consulting agreement which proposed to eliminate the time limit regarding confidentiality contained in the second paragraph of Article 6. (*Id.* at ¶ 9 & Ex. A.) By e-mail sent Wednesday, December 12, 2001, at 7:50 a.m. Marinc advised Masters that his revision was acceptable. (*Id.* at ¶ 10 & Ex. B.) By e-mail sent at 5:24 p.m. on Wednesday December 12, 2001, Masters stated "corrected copy being signed and airmailed to you today please countersign and return one copy for my files." (*Id.*)

On December 12, 2001, Kinetic sent a signed, modified consulting agreement to EOS. (Masters Aff. at ¶ 7.) The consulting agreement proposed to allow EOS to represent Kinetic's interest in the privatization of Noži and Kinetic's proposed purchase of Noži. (*Id.* at ¶ 8.) Kinetic specifically required that EOS provide Kinetic with notice of acceptance of that agreement as a condition to acceptance. (*Id.* at ¶ 9.) Between December 12, 2001, and May 5, 2002, EOS never returned a signed copy of the modified consulting agreement. (Compl.¶ 10.)

Almost immediately after Kinetic sent the modified consulting agreement to EOS, Kinetic became "extremely dissatisfied" with EOS's services, especially Simac's services. (*Id.*) In January 2002, EOS acknowledged that the parties did not have a written contract. (*Id.* at ¶ 12.) In January 2002, EOS engaged in valuation efforts for Kinetic's proposed purchase of Noži. (*Id.* at ¶ 13.)

In February 2002, Masters was informed of certain environmental problems relative to the purchase of Noži. (Masters Aff. ¶ 19.) This information, as well as other problems including, the increase in the price of Noži from two million to five million caused Masters to become dissatisfied with EOS's performance, and, especially, Simic's performance. (*Id.*)

Upset with the problems in purchasing Noži and dissatisfied with EOS and Simac, Masters told EOS that he insisted on having a meeting with Simac in Milwaukee, Wisconsin. (*Id.* at ¶ 20.) On March 14, 2002, Simac came to Milwaukee and visited Masters and two of Masters's associates at the Tuckaway Country Club. (*Id.* at ¶ 21.) On March 15, 2002, after a tour of Kinetic's facilities, Simac met with Masters and his two associates at Kinetic for about three and one-half hours. (*Id.* at ¶ 21.) During that meeting, Kinetic expressed extreme dissatisfaction with Simac. (*Id.*) The meeting was "critical and often heated" since its outcome was "a substantial factor" in Masters's subsequent approach to the potential purchase of Noži. (*Id.*) Those present at the March 15, 2002, meeting conducted "significant discussions" with regard to Kinetic's possible purchase of Noži. (*Id.*)

As a result of its "dissatisfaction" with EOS's services, on May 3, 2002, Kinetic notified EOS in writing that Kinetic's offer to contract was terminated. (*Id.* at ¶ 12.) However, by correspondence dated May 5, 2002, for the first time, EOS returned a copy of the December 12, 2001, consulting agreement which it had signed. (*Id.* at ¶¶ 14–15.)

For the consulting services EOS provided to Kinetic from October 2001 through April 30, 2004, EOS submitted five invoices to Kinetic, as follows:

| Date | Amount |
| --- | --- |
| 12/31/01 | $13,592.00 |
| 2/05/02 | $ 9,069.20 |
| 3/27/02 | $15,291.04 |
| 4/08/02 | $23,296.85 |
| 5/08/02 | $19,883.24 |

(Marinc Aff. ¶ 17.) Kinetic paid the first invoice in the amount of $13,592 but has not paid the other invoices which total $67,540.33. (*Id.*) A document attached to EOS's April 8, 2002, invoice lists seven hours for travel by Simac on March 15, 2002, and "11, 5" [3] for "consultancy, travel" by Simac on March 16, 2002. (Marinc Aff. ¶ 17, Ex. F.) The document does not include any entry for service by Simac on March 14, 2002. (*Id.*)

On March 31, 2003, EOS filed a request for arbitration with the ICC International Court of Arbitration. (Marinc Aff. ¶ 21 & Ex. I.) [4]

---

**3.** There is no explanation of the meaning of this entry. It may indicate that 11 hours were billed for consultative services, and five hours were billed for travel.

**4.** EOS, with its reply brief, has attached a copy of a purported interim decision, *BDO EOS SVETOVANJE d.o.o. vs. The Kinetic Co. Inc.*, Case No. 12663/ACS/FM (Int'l Comm. Arb. Aug. 6, 2004). The interim decision was issued between the dates that Kinetic filed its response brief and EOS filed its reply brief on EOS's motion to dismiss in this case. EOS has used the interim decision in its reply arguments, though Civil L.R. 7.1(f) (E.D.Wis.) states: "a reply brief and any affidavits or other documents filed with the reply brief must be limited to matters in reply." In the absence of EOS's application for permission

## Analysis

 A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Purdue Research*, 338 F.3d at 779. The extent of this Court's personal jurisdiction depends on the scope of the Wisconsin long-arm statute, Wis. Stat. § 801.05, subject to federal constitutional limits. *Nelson v. Bulso*, 149 F.3d 701, 703 (7th Cir. 1998); *Mid–America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1359–60 (7th Cir.1996).

 Under Wisconsin law, personal jurisdiction over a defendant exists when (1) the defendant is subject to jurisdiction under the Wisconsin long-arm statute and (2) exercising jurisdiction under the statute does not violate the due process requirements of the Fourteenth Amendment of the federal constitution. *Mid–America Tablewares*, 100 F.3d at 1358–59 (citing *In re All–Star Ins. Corp.*, 110 Wis.2d 72, 76, 327 N.W.2d 648, 650 [1983]). The plaintiff has the burden of proving the existence of personal jurisdiction. *Mid–America Tablewares*, 100 F.3d at 1359 (citing *State ex rel. N.R.Z. v. G.L.C.*, 152 Wis.2d 97, 104, 447 N.W.2d 533, 535 [1989]; *Lincoln v. Seawright*, 104 Wis.2d 4, 9, 310 N.W.2d 596, 599 [1981]).

"The Wisconsin Supreme Court has determined that its long-arm statute is to be liberally construed in favor of the exercise of jurisdiction." *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 391 (7th Cir.1994). Furthermore, that court has concluded that Wisconsin's long-arm statute "was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due pro-

cess of law." *Mid–America Tablewares*, 100 F.3d at 1359 (quoting *Flambeau Plastics Corp. v. King Bee Mfg. Co.*, 24 Wis.2d 459, 464, 129 N.W.2d 237, 240 [1964]).

The threshold step in deciding whether personal jurisdiction exists over EOS is to determine whether Kinetic has alleged that EOS committed one of the acts enumerated in Wisconsin's long-arm statute. *See McIlwee v. ADM Industries, Inc.*, 17 F.3d 222, 223 (7th Cir.1994). To make this showing Kinetic relies upon two provisions of the Wisconsin long-arm statute, Wis. Stat. § 801.05(4) and Wis. Stat. § 801.05(5)(b).

Section 801.05(4) of the Wisconsin Statutes states:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 . . . :

In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:

(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

Wisconsin courts have held that Wis. Stat. § 801.05(4) requires a tortious injury. *See Nagel v. Crain Cutter Co.*, 50 Wis.2d 638, 642, 184 N.W.2d 876, 878 (1971). Kinetic cites *Housing Horizons LLC v. Alexander Co.*, 232 Wis.2d 178, 606 N.W.2d 263 (Wis.App.1999), in arguing that this Court

from the Court to submit new material with its reply brief, the interim decision has not been considered. Further, EOS simply attached the interim decision to its brief, without authentication and without presenting any legal authority to support its reliance upon the interim decision.

may exercise personal jurisdiction over EOS pursuant to Wis. Stat. § 801.05(4). However, *Housing Horizons* involved an action for negligence—a tort claim—and, thus, is distinguishable from the instant case. Here, Kinetic makes a claim for unjust enrichment and seeks declaratory judgment regarding an arbitration clause in a proposed, but unexecuted, contract.

■■■ A claim for unjust enrichment is an equitable claim. *General Split Corp. v. P & V. Atlas Corp.*, 91 Wis.2d 119, 124, 280 N.W.2d 765 (1979). Likewise, Kinetic's claim for declaratory judgment, arising under the Uniform Declaratory Judgment Act, adopted as Wis. Stat. § 806.04, is equitable in character. *See Belanger v. Local Div. No. 1128, Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees*, 256 Wis. 274, 278, 40 N.W.2d 504 (1949) (regarding the predecessor declaratory judgment statute—Wis. Stat. § 269.56(8)). So,neither of Kinetic's claims relates to a tort injury. Rather, this action relates to the parties' attempt to form a contractual relationship to govern the consultative services provided by EOS to Kinetic. As such, Kinetic's reliance upon Wis. Stat. § 801.05(4) to establish the existence of personal jurisdiction over EOS is misplaced.

Section § 801.05(5)(b) of the Wisconsin Statutes upon which Kinetic also relies states:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 . . . :

5) Local services, goods or contracts. In any action which:

\* \* \* \* \* \*

(b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant.

The Reporter's Notes for the 1967 revision of the Wisconsin long-arm statute, then codified as Wis. Stat. § 262.05(5), state:

Three jurisdictional facts are required by this subsection: (i) a claim arising out of a bargaining agreement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere which evidences the bargaining arrangement sued upon; (iii) a showing that the arrangement itself involves or contemplates some substantial connection to the state. . . . Arrangements for the performance of services within the state by either party for the other are dealt with in subs. 5(a) and (b).

James J. Burke, et al., *Wisconsin Annotations*, 1307 (5th ed.1970).

In advocating the applicability of this section of the Wisconsin long-arm statute, Kinetic relies upon the March 14—15, 2002, Wisconsin meeting between Kinetic and EOS's representative, Simac. Inexplicably, neither party cites any cases construing Wis. Stat. § 801.05(5)(b).

This portion of the long-arm statute has been construed by two Wisconsin court of appeals' decisions, as well as three federal district court decisions,[5] including *Generac Corp.*, 19 F.Supp.2d at 917, issued by this Court. *Brown*, 165 Wis.2d 52, 477 N.W.2d 296, provides the greatest guidance in ana-

---

5. *Regal Ware, Inc. v. TSCO Corp.*, 207 Wis.2d 538, 558 N.W.2d 679 (Ct.App.1996); *Brown v. LaChance*, 165 Wis.2d 52, 477 N.W.2d 296 (Ct.App.1991); *Generac Corp. v. Omni Energy Sys.*, 19 F.Supp.2d 917, 920 (E.D.Wis.1998);

*Harley–Davidson Motor Co. v. Motor Sport, Inc.*, 960 F.Supp. 1386 (E.D.Wis.1997); *Harley–Davidson, Inc. v. Quattrocchi*, 902 F.Supp. 863 (E.D.Wis.1995).

lyzing the applicability of § 801.05(5)(b) to the circumstances of this case.

*Brown,* upheld the trial court's determination that § 801.05(5)(b) afforded personal jurisdiction over a Massachusetts law firm on a third-party complaint filed by two Wisconsin lawyers which sought contribution or, alternatively, indemnification in a legal malpractice action. The two Wisconsin lawyers were defendants in the legal malpractice action filed by plaintiff Harold Brown ("Brown"), a Massachusetts resident, who had lent money to the Wisconsin owner of a Wisconsin resort, as an investment in the resort's real estate. The Massachusetts law firm, Brown's primary counsel, retained the two Wisconsin attorneys to perform various legal services for Brown with respect to the loan, including ascertaining that certain documents complied with Wisconsin law, recording those documents, filing Uniform Commercial Code statements, and disbursing funds. Brown alleged that the two Wisconsin attorneys were negligent in preparing and filing those legal papers. Thus, the action arose out of the services rendered by the Wisconsin attorneys at the behest of the Massachusetts law firm and fell within the ambit of Wis. Stat. § 801.05(5)(b). *Brown* involved a substantial connection to this state. The legal services were provided in this state and the money was lent to a Wisconsin resident.

■ The dispute in the instant case arises out of the consulting relationship between the parties and their unsuccessful attempt to reach a bargaining agreement regarding EOS's services in Slovenia, relative to the Kinetic's possible purchase of Noži—a Slovenian company. The parties were brought together because Kinetic needed an inside agent to help it purchase a Slovenian company. That relationship was two and one-half years old before anyone from EOS set foot on Wisconsin soil, and then it was only because Kinetic

insisted. Though Simac participated in a business meeting while in Wisconsin (thus, providing services to Kinetic), he was in Wisconsin overnight and the meeting comprised only three and one-half hours of a two and one-half year relationship. Based on these circumstances, the Court concludes that Kinetic has not met its burden of establishing that the Court has personal jurisdiction over EOS under Wis. Stat. § 801.05(5)(b).

Even if Kinetic had established that § 801.05 applied, it fails the second consideration of a personal jurisdiction analysis. The Court must also consider whether EOS has minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l. Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The Supreme Court has labeled two types of jurisdiction—"general" and "specific"—that minimum contacts can establish. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Id.* at 416, 104 S.Ct. 1868. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002). Specific jurisdiction is more limited. *Id.* Specific jurisdiction exists when the "litigation arises out of or is related to [the

defendant's contacts with the forum state]." *Logan Prod., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir.1996).

Here, Kinetic argues only that specific jurisdiction exists. To establish specific jurisdiction, the Court analyzes only those contacts from which the cause of action arises. *See Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998).

Several factors inform the fairness of a state court's exercise of jurisdiction over a defendant. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945–46 (7th Cir.1992). Those factors include: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).).

■ Kinetic has failed to establish that EOS has the requisite contacts with Wisconsin to comport with due process. EOS's negotiations with respect to the terms of the consulting contract were conducted outside Wisconsin. EOS's sole contact with Wisconsin was its dealings with Kinetic regarding Kinetic's interest in acquiring Noži—a Slovenian company. EOS's services and its expertise were tied to Slovenia—the investigation and possible assistance in the purchase of Noži. EOS was helping a company understand the Slovenian corporate landscape. As far as

EOS is concerned this potential transaction had nothing to do with Wisconsin except that Kinetic happens to be headquartered here. Kinetic could have been headquartered in Topeka, Kansas or Toronto, Ontario—it would have made no difference to EOS. EOS did not purposely avail itself of Kinetic's legal system. Rather, Kinetic purposely availed itself of EOS's legal system. EOS did not anticipate that it would be hauled into court in Wisconsin.

The proposed consulting agreement between Kinetic and EOS expressly provided for the arbitration in Switzerland before the International Court of Arbitration of the International Chamber of Commerce.[6] While Kinetic's position that the consulting agreement was not accepted by EOS is taken as true for purposes of this motion, it is noteworthy that there is no indication of any disagreement between the parties during their negotiations with respect to the arbitration term of the proposed consulting agreement.

Simac did perform some services for Kinetic when he was in Wisconsin from March 14, through March 15, 2002. The pertinent EOS invoice does not include any time for services provided by Simac on those dates—it includes his travel time only. The isolated visit of Simac to Wisconsin from March 14, through March 15, 2002, when the relationship between Kinetic and EOS was shaky is an insufficient predicate for a finding that EOS purposely availed itself of the privilege of conducting activities within Wisconsin so that it should have reasonably anticipated being haled into court here to defend an action claiming that EOS was unjustly enriched and a declaration that EOS cannot force Kinetic to arbitrate in Switzerland and that Kinet-

6. While EOS argues extensively about the arbitration provision in the agreement between EOS and Arthur Andersen SC, it does not explain why that agreement has anything more than tangential relevance to this dispute.

ic does not owe the monies claimed by EOS. Also relevant is the fact that underlying this dispute is EOS's agreement that Andersen Worldwide would act as its non-exclusive agent in referring clients interested in conducting business transactions in Solvenia.

Like *Asahi,* long-arm jurisdiction would extend beyond national boundaries and EOS would have to defend itself in a foreign nation's judicial system. Despite the increasing ease of air travel, Wisconsin is quite distant—over 4,500 miles—from Slovenia. Wisconsin does not have any strong interest in adjudicating this dispute between Kinetic and EOS, which arises from the parties' unsuccessful dealings with respect to Kinetic's interest in investigating and potentially purchasing Noži—a Slovenian company.

Thus, this Court concludes that Kinetic has not established that the personal jurisdiction over EOS, a Slovenian company, is afforded by Wis. Stat. § 801.05(4) or Wis. Stat. § 801.05(5)(b). Furthermore, the exercise of personal jurisdiction over EOS offends "traditional notions of fair play and substantial justice." Therefore, EOS's motion to dismiss for lack of personal jurisdiction is granted.

In light of such conclusion, the Court need not address EOS's alternative ground for dismissal—predicated upon the purported agreement of the parties to arbitrate in Switzerland and the pendency of that proceeding. However, in its moving brief, EOS makes the statement on page one, thereafter devotes only a paragraph of its moving brief to that contention, and cites no supporting legal authority. EOS would not carry the day with its underdeveloped argument.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Kinetic's Motion to Dismiss for Lack of Personal Jurisdiction (Docket # 3) is

**GRANTED,** and this action is dismissed; and

The Clerk of Court **SHALL ENTER JUDGMENT** accordingly.